Heck and Pace *v.* McEwen.

HECK and PACE *v.* J. P. McEWEN *et al.*

CORPORATIONS. *General law. Chancery court.* An order of the chancery court, under the act of 1871, ch. 54, organizing a corporation for a purpose provided for by a general law is valid to the extent of the provisions of that law, and void only for any excess of powers and privileges which it may undertake to confer beyond the provisions of the statute.

FROM KNOX.

Appeal from the Chancery Court at Knoxville. W. B. STALEY, Ch.

HENDERSON & JOUROLMON, T. S. WEBB and W. M. BAXTER for complainants.

ANDREWS & THORNBURG for defendants.

COOPER, J., delivered the opinion of the court.

The chancellor sustained a demurrer to this bill, and the Referees have reported in favor of affirming his decree.

The bill was filed in March, 1882, to have declared void the charter of the Coal Creek Mining and Manufacturing Company, organized in March, 1872, under a decree or order of the chancery court by virtue of the act of 1871, ch. 54. The complainants each own twenty-five shares of the capital stock of the company acquired by purchase, and the defendants own the residue of the stock, the entire capital stock

being nominally $2,500,000. The property of the company consists of mountain lands principally valuable for mining purposes.

Charles A. Bulkley, Wm. S. McEwen and Henry H. Wiley were the owners of the lands mentioned under different and often conflicting titles. On December 25, 1871, they entered into an agreement in writing, by which they agreed to procure a charter of incorporation for mining and manufacturing purposes, and to convey to the company or corporation all the said lands to become the corporate stock, and to hold the stock as follows: Bulkley one-half and McEwen and Wiley each one-fourth. In pursuance of this agreement, they applied to the chancery court to be incorporated under the provisions of the act of the Legislature of 1871, ch. 54, and, on March 11, 1872, a decree or order was made by that court that they, their associates, successors and assigns, be incorporated by the name of "The Coal Creek Mining and Manufacturing Company," with the right to sue and be sued, "and have succession for a period of ninety-nine years from and after the first day of April, 1872, with power to purchase or lease personal and real estate, and hold and dispose of the same in the same way, and to mine for coal, iron and other minerals, manufacture or vend the same, and to have and enjoy all the rights, privileges and immunities, and be bound by all the restrictions, and subject to all the duties and liabilities prescribed in chapter two, article four, of the Code of Tennessee, from section 1474 to 1497, inclusive." In April, 1872, Bulkley, McEwen and Wiley

met and accepted said charter, and assumed to organize as a corporation thereunder by electing directors and officers, and adopting by-laws. The capital stock was fixed at $2,500,000, and was issued to the three contracting parties in the proportion stipulated by their agreement. The complainants hold under these original incorporators, as do most of the defendants, Bulkley being the only survivor of the three, and he having parted with a portion of his stock to some of his co-defendants. The capital stock consists entirely of the lands conveyed to the company by the original corporators. The complainants purchased the stock owned by them in good faith, believing that the company was legally incorporated, and authorized to exercise the franchises and carry on the business assumed to be exercised and carried on by the. company. The bill adds: " Your orators charge that, aside from electing officers, bringing suits in the corporate name, etc., the only power that has ever been exercised " by said defendants and your orators, assuming to act as a corporation and from which revenues have been derived, is the power to lease real estate to others for mining upon a royalty in the way of rent." The bill assumes that the incorporation was void, and the stockholders partners under the firm name and style of the Coal Creek Mining and Manufacturing Company. The prayer is that the charter be declared void, the partnership dissolved, the business wound up, and the partnership property sold, and proceeds of sale divided among the parties according to their respective interests·

The bill proceeds entirely upon the ground that

the order of the chancery court and the subsequent organization of the corporation under it were void, and that the complainants and defendants were partners. In this view, the complainants and defendants would be partners in a stock company, each partner being interested in the property and the profits in the proportion of the stock owned by him, and liable individually for the debts of the partnership, if any creditor should resort in the first instance to his effects instead of the property of the firm. But the partners would be bound by the provisions of the decree of incorporation as the articles of partnership, and by the organization formed and business conducted under it. There is no illegality in such a partnership nor in the business. The articles of partnership, in this view, stipulated for a continuance of the partnership for ninety-nine years from the date of organization. In the absence of any agreement for the continuance of a partnership for a definite period, any partner may, of course, put an end to it at any moment. But where the contract stipulates for a definite period, the parties and their privies are necessarily bound by it. No number of them less than a majority can call upon the courts to violate this contract except for some cause sufficient in law to justify the act. The utter inability of carrying on the business profitably upon the basis of the articles of agreement is a well recognized ground for the dissolution of a partnership in advance of the time stipulated: *Waters* v. *Taylor*, 2 V. & B., 299; *Seighortner* v. *Weissenborn*, 5 C. E. Green, 177; *Brien* v. *Harriman*, 1 Tenn. Ch., 467.

There may be other sufficient grounds for such a dissolution. The only ground alleged in the bill is that the complainants became the purchasers of their shares of the stock in good faith, believing that the company was legally incorporated. But the bill does not state that they were ignorant of the facts touching the organization of the company, and if they did know them, their ignorance was an ignorance of law not fact. And if ignorant of the facts, their remedy would be against the parties under whom they claim, not against co-partners in no way implicated in misleading them. Ordinarily, the sale of an interest in a partnership would be itself a dissolution of the firm, but no such consequence can follow a sale of stock which the articles of partnership contemplate shall be sold. And persons who purchase such stock must be held bound by the terms of the association, and cannot be permitted to put an end to the business unless they can show a controlling equity. No such equity is disclosed by this bill.

By the act of 1871, the chancery court was authorized to organize corporations for the purpose of manufacturing and mining, to be regulated and controlled as prescribed by the Code, from section 1452 to 1466, inclusive, and with the general powers and privileges, and subject to the liabilities prescribed by the Code from section 1474 to 1497, inclusive. These latter sections contain general provisions in relation to all private corporations, while the former sections relate to the powers and liabilities of corporations created for the purpose of manufacturing, quarrying and mining.

In reference to this class of corporations the act of 1871 only changed the mode of their organization. Before that act, the corporation might be organized in the mode prescribed by the Code. After that act, the parties interested might organize the corporation under an order of the chancery court, upon petition. Whichever mode was adopted, the powers, duties and liabilities of the corporation were precisely the same. The act was no doubt intended to go further, and to vest the chancery court with jurisdiction to create corporations. The act was held to be constitutional in so far as it undertook to empower the court to organize corporations for the purposes, and with the franchises granted by a general law: *Chadwell et al. ex parte*, 3 Baxt., 98; *Burns et al. ex parte*, 1 Tenn. Ch., 83. The chancery court did, therefore, have the power to organize corporations for the purpose of manufacturing and mining, and might organize the Coal Creek Company, in the mode pursued.

The chancery court, upon the petition of Bulkley, McEwen and Wiley, did order, adjudge and decree that they, their associates, successors and assigns, be incorporated by the name of the Coal Creek Mining and Manufacturing Company. If it had stopped there, the new corporation would have had the general powers of all private corporations prescribed by the Code, sections 1474 to 1494, and the particular powers prescribed by sections 1452 to 1466. For the court would have organized the corporation, and the statute law would have defined its attributes. The pre-existing mode of organizing corporations did not require any thing more

in the memorandum signed by the parties than the
petition and order of court thereon would have shown.
The action of the court could only effect, and be evi-
dence of the organization, the powers and privileges
being conferred by the general statutes: *Railroad* v.
*Johnson*, 8 Baxt., 332.    The order of the court un-
dertook to go further, and does specify some · of the
powers and privileges of a corporation for mining and
manufacturing but not all, and does confer some powers
not authorized by the general law.    If the order of
the court had been for the organization of a corpora-
tion for a purpose not provided for by a general law,
the order and organization would have been void, as
was held in Chadwell's case.    The order in this case
was for the organization of a corporation provided for
by law, and was to that extent valid.    The question
raised by the bill is whether a valid organization is
rendered invalid and void by the fact that the order
·does not recite or· refer to all the provisions of the
general law on the subject of the particular corpora-
·tion, and does undertake to confer some powers not
authorized by the general law.

The question is not free from difficulty.    For, on
the one hand, we may suppose the case suggested by
counsel, where the order of the court attempted to
confer various powers, none of which were authorized by
statute, except the powers incident to all corporations
by the common law, such as the power to sue and be
sued, etc.; and, on the other hand, we might take the
case where in an order undertaking to recite the stat-
utory privileges one of them is inadvertently omitted

or changed in character by a clerical misprision. Extreme cases create exceptions, however, and do not form rules. The general rule must be that the organization of a corporation for a purpose provided· for by law is good to the extent of the provisions of the law, neither vitiated by what may be treated as surplusage, nor by what it is beyond the power of the court to confer. And this for the reason that the corporators are bound to know the law, and to accept the organization subject to its limitations. It is not the organization, but the matter *ultra vires* of the incorporation that is void. A misuser of the corporate franchises may forfeit the charter upon proper proceedings, but will not avoid it *ab initio.* The bill,. it is conceded, cannot be sustained unless the incorpotion is void.

When the subject of the organization of corporations· by the chancery court, under the act of 1871, came before me as chancellor, I held "that any charter granted by the court of chancery, if it had the power to create corporations, to any one set of individuals for a corporate purpose not conceded by a general law to all other citizens who might bring themselves within it, would be clearly unconstitutional and void." I was also of opinion, and so decided, that any organization of a corporation by the court for a purpose not conceded by a general law would be void: *Chadwell ex parte,* 1 Tenn. Ch., 95. These rulings were affirmed by this court. I was, moreover, so impressed with the danger of permitting parties to fix up a charter to suit themselves, and to cull out from the

Code, and from former acts of incorporation, such rights and privileges as they might think would best suit their purpose, as was then being done in the chancery courts all over the State, that I was inclined to think that such charters, even for purposes conceded by a general law, would be void. I did not positively say so, but that was my opinion at the time, and the language used fairly admits of the construction. It was only a *dictum,* and the decisions of this court have not gone so far. The order of the court in *Railroad* v. *Johnson,* 8 Baxt., 332, upon an application to incorporate the petitioners for the purpose of building a railroad which was authorized by a general law, seems to have undertaken to set out the provisions of the charter, and probably, although the fact does not distinctly appear, contained some privileges not within the purview of the statute. Judge McFarland, in delivering the opinion of the court, said: "With regard to the so-called charter spread upon the record of the chancery court, we need only say, as we have in several recent cases, that the powers and privileges conferred are by virtue of the general statutes upon the subject, and that the action of the court could only effect and be evidence of the organization." The question was distinctly raised in the unreported case of *E. T. Williams et al.* v. *The Duck River Valley and Narrow Gauge Railroad Co. et al.,* decided some years ago at Nashville. The railroad company in that case had been organized by an order of the chancery court with all the powers and privileges of two other railroad companies named, and with the rights, powers

etc., granted to railroad companies by the act of 1871, ch. 54, and all amendments thereto. The bill was filed by tax-payers of Marshall county to enjoin the collection of a tax levied to pay the interest accruing on the bonds of the county issued to the Duck River Railroad Company to aid in its construction. This court held that under the circumstances of the case the validity and regularity of the proceedings by which the company was organized could not be inquired into in the mode adopted. "But," said the court through Ch. J. Deaderick, "we are of opinion the charter is valid as to all the powers conferred by the act of 1871, and the amendments thereto, but not as to any powers attempted to be conferred which were included in the charters of the companies mentioned in the order of the chancery court." The inclination of the court has been to treat the order of organization for a corporate purpose provided for by a general law as valid to the extent of the powers conceded by the general law, and only invalid for any excess of powers or privileges beyond the provisions of the statute. And we now so hold in a case calling for a direct decision.

The report of the Referees will therefore be confirmed, and the decree of the chancellor affirmed with costs.